## BOB PARK v. STATE.

No. A-2254.    Opinion Filed March 4, 1916.

(155 Pac. 494.)

1.  **INTOXICATING LIQUORS** — Information — **Insufficiency.** An information which alleges that the defendant had in his possession intoxicating liquors, and which does not allege generally an intention to violate provisions of the prohibitory law, or specifically allege an intention to sell, barter, give away and otherwise furnish such liquors, is too indefinite to charge any offense, and a demurrer thereto would have been sustained.

2.  **INTOXICATING LIQUORS** — Prosecution — **Sufficiency of Evidence.** Evidence considered and held as a matter of law insufficient to sustain the conviction.

*Appeal from County Court, Greer County;*
*C. M. Thacker, Judge.*

Bob Park, convicted of violating the prohibitory law, appeals. Reversed.

*E. M. Stewart,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

PER CURIAM. The plaintiff in error was tried, convicted and sentenced to pay a fine of fifty dollars, and to be confined in the county jail for thirty days on an information which after alleging time and venue, charged that:

"Bob Park did then and there unlawfully have in his possession a large quantity of whisky, to-wit, about fifteen gallons, with the intention of then and there violating the law, contrary to," etc.

To reverse the judgment an appeal by case-made was perfected. On motion of the attorney general the appeal was dismissed for failure to prosecute. (*Park* v. *State*, 11th Okla. Cr. 726.)

Upon a proper showing the order dismissing the appeal was set aside and the case submitted on briefs.

The evidence for the state was substantially as follows:

O. P. Melton testified that he was in the hauling and baggage wagon business at Mangum; that on the date alleged in the information the defendant called him on the street near the Mangum restaurant and gave him a check for a trunk, and said a party gave him the check and the trunk was to go to the fair grounds. That the county fair was going on at that time. That when he gave the check to the baggageman at the depot he showed him the trunk and when he went to take the trunk the under-sheriff and city marshal came in and said they would take the trunk.

J. A. McKibbin testified that he was under-sheriff and was at the Wichita Falls and North Western depot checking whisky shipments, and he shook a number of trunks; in one of them he heard bottles clink, and told the baggageman that he would have to arrest that trunk. The baggageman said that he had received the check and turned the trunk over to Mr. Melton, so he went back and told Mr. Melton that he would have to take that trunk, that he took the trunk and put it on Mr. Melton's wagon and brought it to the court house and there opened it and found that .it was full of whisky. That there were no marks or brands on the trunk to indicate whom it belonged to.

W. M. Tuton, testified that he was city·marshal of Mangum and was at the depot with the under-sheriff when Mr. Melton gave the baggage boy the check for the trunk and he took the check of the trunk and Mr. Melton started to take the trunk out and the under-sheriff told him they would take it. That they put the trunk in Mr. Melton's wagon and brought it to the court house.

As a witness in his own behalf, Bob Park testified that he had been living in Mangum ten years, during which time he had been engaged in the business of public weigher for the county of Greer and buying cotton; that his present occupation was cotton buyer; that he remembered the circumstance of giving Mr. Melton, the drayman a check and fifty cents; that he had not seen the trunk until this day, and did not know its contents or to whom it belonged.

His further testimony is as follows:

"Q. You go ahead and state what led up to the circumstance of you giving Mr. Melton the check for this trunk. A. I was just coming from home and I came on up by the Mangum Cafe, and a fellow stepped out of the restaurant there, and he said do any of you people know where I could get a man to haul a trunk for me, and I, just like anybody would, I said there is a man coming there now, I saw Mr. Melton, and he said I am in a hurry and I wish you would give him this check, and he said here is fifty cents to pay for the hauling of it, and I motioned for Mr. Melton and he came on and I gave him the check and fifty cents which the fellow gave me and told him to take the trunk to the fair grounds. The man got in a car with a woman and went on to the fair grounds.

"Q. Did you ever see this man and woman anymore? A. No sir.

"Q. State whether or not there was a crowd in town and they were going back and forwards from the fair grounds? A. Yes sir.

"Q. There was a good many show people coming in and going to and from the fair grounds? A. Yes sir.

"Q. State who was with you when this occurred? A. Mr. Futch and Mr. Rayburn.

"Q. What 'Futch' is that? A. Arthur Futch.

"Q. You may state whether or not, Bob, you made any statement to Mr. Melton at the time you gave him this trunk check? A. Yes, I stated to him that a fellow had just gave me this check, and I told him if it looked suspicious he had better let it alone."

J. A. Futch testified that he had lived in Mangum seven years and was engaged in the cotton business and was present at the time Mr. Park received a trunk check from a man on the corner in front of the Mangum Cafe, and that he saw Mr. Park give the check to Mr. Melton, that Hodge Rayburn was with them at the time. He described the circumstance substantially the same as the defendant had testified.

Hodge Rayburn, testified that he had lived in Mangum twenty-two years, and remembered the circumstance of the defendant receiving a check from a stranger in front of the Mangum Cafe, that Mr. Futch and Mr. Park were standing there together and the man asked something about getting a trunk delivered, saying that he was in a hurry; that after giving the defendant a check the man got into a car and drove off towards the fair grounds.

H. D. Bennett testified that he had lived in Mangum about ten years; was gate keeper at the fair grounds; that on the day in question a man and a lady drove up in an auto and the man asked if a job wagon had come in with a trunk. He described the man, which description was in substance the same as that of the other witnesses.

This appeal presents but two questions.

First: The sufficiency of the information to charge an offense; ~

Second: The sufficiency of the evidence to sustain the verdict.

Upon arraignment the defendant interposed a demurrer upon the ground that the facts stated do not constitute a public offense.

The specific objection alleged against the information is that it simply alleges possession, "with the intention of then and there violating the law."

It is necessary that an indictment or information allege every essential element of the crime intended to be charged, and this information does not allege generally an intention to violate provisions of the prohibitory law, and does not allege specifically an intention to sell, barter, give away and otherwise furnish, or to unlawfully convey.

Under numerous decisions of this court the demurrer should have been sustained.

*Michael* v. *The State,* 2nd Okla. Cr. 703, 103 Pac. 1069;

*State* v. *Freeback,* 3rd Okla. Cr. 508, 107 Pac. 442;

*Buffo* v. *State,* 4th Okla. Cr. 516, 113 Pac. 233;

*Crooms* v. *State,* 5th Okla. Cr. 576, 115 Pac. 610.

Upon a careful consideration of the evidence our conclusion is that the evidence is insufficient to show possession, or to show unlawful intent to violate provisions of the prohibitory law.

It follows that the judgment must be reversed and the cause remanded with directions to sustain the demurrer to the information.